308 So.2d 540 (1975)
CITY CAB COMPANY OF ORLANDO, INC., Appellant,
v.
Annie Mae GREEN and Allen Glen Darling, Appellees.
No. 73-1478.
District Court of Appeal of Florida, Fourth District.
February 28, 1975.
*541 R. James Stroker and Duncan Dowling, Gurney, Gurney & Handley, Orlando, for appellant.
Bill McCabe, Meyers, Mooney & Adler, Orlando, for appellee, Green.
WALDEN, Judge.
Plaintiff was a passenger in a taxicab. It made a sudden unexplained stop without warning. Plaintiff claimed that she suffered personal injuries as a consequence. Plaintiff sued the owner of the taxicab, City Cab Company, for damages, saying that its taxi driver was guilty of negligence in the operation of the vehicle.
Jury trial and judgment favored plaintiff in the sum of $5,000. The cab company appeals. It is our view that the trial court erred when it denied the defendant's motion for directed verdict made at the close of plaintiff's case. Thus, we reverse with directions that judgment be entered for the cab company. Reason: there was no proof or evidence or inference of the driver's negligence.
We exactly restrict our gaze to the plaintiff's case. The record of her side of the case consists of her testimony only.
To introduce by giving the legal reason in advance as to why we reverse, it is because the record is devoid of any evidence concerning the circumstances surrounding or leading up to the stop. As a matter of basic negligence law it is necessary that the record reflect the circumstances under which the negligent act of commission or omission occurred. Otherwise the jury is left without a basis for determining what a reasonable man would or wouldn't have done under like circumstances. And in our common carrier instance, what a reasonably careful person would or wouldn't have done under like circumstances. Without such bases for such comparison the jury could only reach a decision based on whim, caprice, or guess. The principle is recognized in Prosser, Law of Torts 3d Ed. Negligence: Standard of Conduct, § 32, The Reasonable Man (1964):
"The conduct of the reasonable man will vary with the situation with which he is confronted. The jury must therefore be instructed to take the circumstances into account; negligence is a failure to do what the reasonable man would do `under the same or similar circumstances.' ... Further, `the rule has been repeatedly laid down that no definition is complete or correct which does not embody that element.' Yerkes v. Northern Pac. R. Co., 1901, 112 Wis. 184, 193, 88 N.W. 33, 36; Garland v. Boston & Me. R. Co., 1913, 76 N.H. 556, 86 A. 141," Id. at 154, n. 21.
See also Atlantic Coastline R. Co. v. Watkins, 97 Fla. 350, 121 So. 95 (1929); Miriam Mascheck, Inc. v. Mausner, 264 So.2d 859 (3rd D.C.A.Fla. 1972); Gresham v. Courson, 177 So.2d 33 (1st D.C.A.Fla. *542 1965); Sprick v. North Shore Hospital Inc., 121 So.2d 682 (3d D.C.A.Fla. 1960); 23 Fla.Jur. Negligence, §§ 2, 19, 20 (1959).
This fundamental premise and requirement is recognized in the Florida Standard Jury Instructions:
"4.1
"NEGLIGENCE
"Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances or in failing to do something that a reasonably careful person would do under like circumstances."
(Emphasis supplied.)
More particularly, in the case of a passenger's case versus a common carrier, as here, Instruction 4.5 applies:
"4.5
"NEGLIGENCE OF COMMON CARRIER
"(PASSENGER CASE)
"Negligence is the failure to use reasonable care. The reasonable care required of a common carrier for the safety of a passenger is the highest degree of care that is consistent with the mode of transportation used and the practical operation of the business of a common carrier of passengers. In such a case negligence of a common carrier may consist either in doing something that would not be done or in failing to do something that would be done by very careful persons under the conditions and circumstances then affecting the carrier and the passenger." (Emphasis supplied.)
See 5 Fla.Jur.Carriers § 130 (1955).
In other words, negligence may not be inferred from the mere happening of an accident alone. Jacobs v. Harlem Cab Inc., 183 So.2d 552 (3d D.C.A.Fla. 1966); Carlton v. Miami Transit Co., 147 So.2d 581 (3d D.C.A.Fla. 1962); see, Metropolitan Dade County v. Dillon, 305 So.2d 36 (3d D.C.A.Fla. 1974); McCormick Shipping Corp. v. Warner, 129 So.2d 448 (3d D.C.A.Fla. 1961); Belden v. Lynch, 126 So.2d 578 (2d D.C.A.Fla. 1961).
We have read and studied every word of plaintiff's testimony looking for evidence or inference to support her case. It consists of 50 pages. Of that number only 13 pages deal with what might be considered the liability question, the remainder deal totally with her alleged damages.
From plaintiff's account we learn there were four occupants of the taxicab. The driver and a female passenger were in the front seat. Plaintiff and a male passenger were in the rear seat.
Critically, plaintiff could not explain, detail the circumstances, or shed any light as to what happened. She testified:
"Q. Do you know why he put the brakes on suddenly?
"A. Sir, I was sitting in the back seat, I couldn't tell you.
"Q. So you don't know.
"A. I don't know."
Gleaning every possible fact and nuance from plaintiff's testimony, we learn that the cab was traveling north on Paramore Street toward its intersection with Orange Blossom Trail in Orlando. Some time after the stop plaintiff noticed another vehicle stopped somewhere in the intersection of the two streets. The driver and the front seat passenger were conversing at undetermined times prior to the stop and the passenger was keeping notes and records for the cab driver. Aside from not knowing why the driver applied brakes, plaintiff's case does not reflect and hence we do not know:
1. The time of the occurrence.
2. The weather conditions.

*543 3. Traffic conditions.
4. Any distances, such as the distance of the cab from the intersection at the time of the stop or the distance from the second vehicle.
5. If traffic control devices, such as lights or stop signs, existed and, if existent, their command at times pertinent. Even further, we do not know if such controls played any part in explanation of the stop.
6. If skid marks existed and, if so, the extent and location.
7. Speed of the cab or speed of the vehicle in the intersection, assuming it may have played some part.
8. Road conditions.
9. If hazards existed.
10. Any timing or sequence of events.
As an aside, since it was not urged, we comment that the doctrine of res ipsa loquitur is not applicable. This is true because it was in nowise established that the application of brakes would not have occurred in the ordinary nature of things absent negligence of the driver. Orme v. Burr, 157 Fla. 378, 25 So.2d 870 (1946); see W.J. Kiely & Co. v. Dickey, 124 So.2d 731 (3d D.C.A.Fla. 1960); Kopp v. Louisville Taxicab and Transfer, 257 S.W.2d 891 (Ct.App.Ky. 1953); Conley v. Town Taxi, 298 Mass. 130, 10 N.E.2d 74 (1973); Bartlett v. Town Taxi, 263 Mass. 215, 160 N.E. 797 (1928); Klein v. Beeten, 169 Wis. 385, 172 N.W. 736 (1919).
And so it is our judgment that under well established criteria governing directed verdict procedures, the plaintiff simply failed to establish in any way, shape or form that the driver was guilty of any negligence whatever. Jacksonville Coach Company v. Rivers, 144 So.2d 308 (Fla. 1962); Conley v. Town Taxi, supra.
Still looking for the basis of the trial court ruling, we have searched plaintiff's brief with care for her hypothesis. She says that the jury could infer negligence because:
1. The driver was not keeping a proper lookout and had to slam on brakes when a car crossed in front of him. We answer that there was no evidence that a car crossed in front of him, or if it did, that it was in such a position and relationship to the taxicab to cause the application of brakes and no evidence that the driver was not keeping a proper lookout.
2. There was an inference that the driver had a girl in the front seat and was conversing with her during the trip. We answer that the testimony of a possible relationship between the driver and passenger was stricken by the court. Further, since when is it negligence or inferable negligence to any degree for a driver of a sedan to converse with a front seat passenger, particularly when there is not a scintilla of evidence to show that it distracted him and when we don't even have the remotest notion as to why he found it necessary to apply brakes.
3. Additionally, this could be inferred from the fact that the cab driver was crossing the Orange Blossom Trail at the time of the incident, and since it is a well known fact in Orlando that the Orange Blossom Trail is a controlled access road, the cab driver should have properly prepared for stop lights, stop signs or on-coming traffic, any of which would require him to come to a stop.
We answer that there is no proof of traffic control devices and no proof that such occasioned his stop and no proof even as to where he stopped with reference to the intersection.
4. Finally, plaintiff says additionally, the jury could easily infer that this was a stop of extraordinary violence. The jury could infer this from the fact that the cab driver immediately slammed on his brakes without giving any warning to any of the passengers, and that the plaintiff and the other passenger in the back seat were thrown about the back seat of the cab.
*544 We do not exactly know how to answer this. Forasmuch as we know from the record, the driver exercised perfect care with heroic measures and did what a perfectly careful person would have done in applying his brakes to avoid some totally unforeseeable hazard. We do not know and plaintiff does not know the conditions and circumstances that prompted the application of the brakes. Not knowing, there is no way that the jury or this Court can have any proper basis for saying that the driver was guilty of negligence.
Without laboring the matter further, it is clearly our judgment that the trial court erred in failing to direct a verdict in favor of defendant. We most respectfully direct that it be done on remand.
Reversed and remanded with directions.
LEWIS, ROYCE, Associate Judge, concurs.
CROSS, J., dissents without opinion.