757 So.2d 612 (2000)
Faye Levine EMMER and Norman Emmer, Appellants,
v.
Marta PEREZ, Dariel Perez, and Marta Perez, as legal guardian of Dariel Perez, Appellees.
No. 3D99-1290.
District Court of Appeal of Florida, Third District.
May 17, 2000.
Ribler, Gilmartin & Sanchez; Barranco, Kircher, Vogelsang & Boldt, P.A. and Kimberly L. Boldt, Coconut Grove, for appellants.
Michael I. Libman, Miami, for appellees.
Before COPE, GREEN and SORONDO, JJ.
GREEN, J.
Appellants were the defendants in an action filed by the appellees for injuries *613 allegedly sustained in an automobile accident. In this action, the appellants maintained that the appellee's comparative negligence was a contributing cause of the accident. The trial was bifurcated on the issues of liability and damages. At the close of the evidence on the liability portion of the trial, the court directed a verdict in favor of the appellees finding appellant Faye Levine Emmer's negligence to be the sole cause of the accident. Thereafter, the Emmers moved for a new trial claiming that the entry of the directed verdict in favor of the appellees was error because they had produced sufficient evidence for the jury to consider Marta Perez's comparative negligence. The trial court denied the appellants' motion.
This was a relatively simple case. The evidence taken in the light most favorable to the appellants, with all conflicts and reasonable inferences construed in their favor, revealed that on November 15, 1993, at approximately 3:30 P.M., Faye Levine Emmer was traveling eastbound on Flagler relatively heavy but there were no inclement weather conditions and the streets were dry. When Ms. Emmer approached the intersection at 40th Avenue, she entered the designated left turn lane so that she could make a left turn. There are no traffic control devices or stop signs at this intersection. At the time that Ms. Emmer was entering the left turn lane at the intersection, Ms. Perez was driving her car westbound on Flagler Street. There are only two lanes for westbound traffic. The evidence showed that Ms. Perez was traveling below the posted speed limit in the right hand lane, closest to the sidewalk, and that there were other cars being driven next to her in the left lane.
As Ms. Emmer approached the intersection at 40th Avenue, she came to a complete stop in the left turn lane to permit the westbound traffic to pass and clear before making her left turn. At some point, a car traveling westbound in the left lane stopped and its driver motioned for Ms. Emmer to make her left turn. At trial, Ms. Emmer acknowledged that the unidentified motorist who summoned her to turn was not a police officer and she also admitted that she could not see the westbound traffic traveling in the remaining right lane.[1] She thus acknowledged that no one in the remaining right lane similarly stopped and yielded the right of way for her to turn left.[2] When Ms. Emmer proceeded to make her left turn she never stopped to check the status of traffic in the westbound right lane.[3] As she entered the westbound right lane, while making her left turn, her car was struck by Ms. Perez. According to Ms. Perez's testimony, she did not see Ms. Emmer's car prior to the accident because the car in the left lane had blocked her view.
At the close of the evidence, the trial court directed a verdict in favor of Ms. Perez on the issue of liability. The trial court found, among other things, that Ms. Perez indisputably had the right of way and that Ms. Emmer admitted that she did not stop to check the traffic in Ms. Perez's lane of oncoming traffic before completing her left turn. Essentially, Ms. Emmer made her left turn across two lanes of westbound traffic in sole reliance upon the *614 direction and permission of a motorist in only one of those lanes, who was not a law enforcement official. Moreover, there is no record evidence to show that Ms. Perez knew or had any reason to know that the driver to her left had decided to yield the right of way to Ms. Emmer.
We entirely agree with the trial court's conclusion that in the absence of any evidence of negligence on the part of Ms. Perez, the entry of a directed verdict on the issue of liability in her favor was appropriate. See Stirling v. Sapp, 229 So.2d 850 (Fla.1969) (motions for judgment notwithstanding verdict, like motions for directed verdict are authorized when there is no evidence or reasonable inference to support the opposing position); see also, e.g., Hendricks v. Dailey, 208 So.2d 101, 103 (Fla.1968) (concluding that "[a] verdict should not be directed where there is a conflict in the evidence or the reasonable inferences to be drawn therefrom."). Contrary to the appellant's arguments on appeal, there was no evidence from which a jury could reasonably find negligence on the part of Ms. Perez. For that reason, the cases relied upon by the appellants are simply inapposite. See Bradshaw v. State Farm Auto. Ins. Co., 714 So.2d 620 (Fla. 5th DCA 1998) (comparative negligence award against driver affirmed where driver admitted to seeing other automobile waiting in the intersection and formed an impression that this other automobile had time to make left turn prior to his arrival at intersection); Barcelo v. Estate of Nelson, 694 So.2d 91 (Fla. 3d DCA 1997) (directed verdict in favor of defendant motorist, who had stop sign, was error because whether one or both drivers were negligent given the wet road conditions during rush hour traffic was a question for the jury); Linguist v. Boyd, 473 So.2d 22 (Fla. 3d DCA 1985) (partial summary judgment entered in favor of plaintiff on issue of liability reversed where plaintiff may have been traveling at an excessive rate of speed during a rainstorm). Moreover, the law is clear that a jury may not impose liability against a driver simply by virtue of the occurrence of an accident. See East Bay Raceway v. Parham, 497 So.2d 719, 720 (Fla. 2d DCA 1986) (holding that "[n]egligence cannot be assumed by proving merely that an accident occurred."); see also City Cab Co. of Orlando v. Green, 308 So.2d 540, 542 (Fla. 4th DCA 1975) (holding that "negligence may not be inferred from the mere happening of an accident alone.").
Unlike the facts in the above cases, in this case, there was no evidence that there was inclement weather or that Ms. Perez was traveling too fast for the road conditions prior to the accident. Nor was there any evidence that Ms. Perez knew or had reason to know that the driver to her left had summoned or directed Ms. Emmer to make a left turn. Rather, the evidence adduced at this trial simply reveals that Ms. Emmer suddenly and unexpectedly turned left in Ms. Perez's pathway. The evidence further leads only to the inescapable conclusion that the sole cause of this accident was Ms. Emmer's failure to stop and check Ms. Perez's lane of traffic for herself prior to proceeding with her turn. Ms. Emmer was not entitled to rely solely upon the directions given to her by a non-law enforcement motorist under these factual circumstances.
For these reasons, we affirm the orders under review.
Affirmed.
NOTES
[1] Ms. Emmer testified as follows:

[Q] Before you pulled into lane one, could you have seen down lane two, was there anything obstructing your view?
[A] No.
[Q] Before you pulled into lane one, you were able to see lane two, and you saw no cars were coming down the road?
[A] That's not what I said, I don't believe that's what I said.
[2] Ms. Emmer testified as follows:

[Q] Did the driver in lane two where the accident happened ever give you permission to pull in front of her?
* * *
[A] No.
[3] Ms. Emmer's testimony on this point was as follows:

[Q] Ma'am, do you understand the word stop, there's a word called going slow, going fast and word called stop. When you pulled in front of lane one, did you stop?
[A] No, I did not stop, I don't believe.